IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| KOLTON BOURGEOIS, and KOETHE BOURGEOIS, INDIVIDUALLY, AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF DECEDENT RORY J. BOURGEOIS, | § | |
| Plaintiffs | § | |
| v. | § | CASE NO. 3:16-cv-00154 |
| BELL HELICOPTER TEXTRON INC., ROLLS-ROYCE NORTH AMERICA HOLDINGS, INC., and COY LEASING, L.L.C., | § | |
| Defendants. | § | |

**DEFENDANT BELL HELICOPTER TEXTRON INC.'S**
**MOTION FOR SUMMARY JUDGMENT**

COMES NOW Defendant Bell Helicopter Textron Inc. ("Bell") and, pursuant to Rule 56 of the Federal Rules of Civil Procedure, files this its Motion for Summary Judgment ("Motion").

## Table of Contents

I. Background ........ 3

II. Issues to be Ruled upon ........ 3

III. Summary of the Argument ........ 3

IV. Argument and Authorities ........ 5

A. There is no evidence of negligence ........ 5

1. There is no evidence of certain duties ........ 6

2. There is no evidence of breach of any duty ........ 6

3. There is no evidence any breach of any duty caused injury ........ 8

B. Strict Products Liability ........ 9

1. There is no evidence of design or manufacturing defect at time of sale ........ 9

2. There is no evidence any marketing defect of the helicopter caused injury ........ 10

C. Plaintiffs cannot recover certain damages ........ 11

D. Plaintiff Kolton Bourgeois is not a proper party to this suit ........ 13

IV. Prayer ........ 14

## I. Background

Rory J. Bourgeois (the "Decedent") was killed when the helicopter he was a passenger in crashed in the Gulf of Mexico. The helicopter was manufactured by Bell.

The Decedent's children, Koethe Bourgeois and Kolton Bourgeois ("Plaintiffs"), filed suit against Bell. By the Court's May 30, 2017 Order [Dkt. 37], discovery closed on July 17, 2017, and the deadline for dispositive and all other pretrial motions is August 8, 2017.

Filed contemporaneously with this Motion is Bell's *Motion to Strike the Reports and Opinions of Plaintiffs' Expert Arthur B. Childers* ("Motion to Strike"). In the event the Court grants Bell's Motion to Strike or grants it in part, that affects the evidence available to Plaintiffs to attempt to show a genuine dispute of material facts in response to this Motion.

## II. Issues to be Ruled upon

1. Does the evidence show a lack of genuine dispute as to material fact with respect to the liability elements of Plaintiffs negligence claim against Bell?

2. Does the evidence show a lack of genuine dispute as to material fact with respect to liability elements of Plaintiffs strict products liability claim against Bell?

3. Are lost wages damages unavailable to Plaintiffs under the Death on the High Seas Act ("DOHSA")?

4. Does the evidence show a lack of genuine dispute as to material facts with respect to Plaintiffs alleged loss of services damages?

5. Is Plaintiff Kolton Bourgeois an improper party to this suit under DOHSA?

## III. Summary of the Argument

Summary judgment should be granted with respect to Plaintiffs negligence claims against Bell as there is no genuine dispute as to material fact. Plaintiffs allege negligence in designing,

manufacturing, assembling, distributing, servicing, inspecting, certifying as airworthy, selling aircraft components and systems, training pilots, and warning users. There is no evidence Bell serviced or owed a duty to service the helicopter. There is no evidence Bell trained the pilot or owed a duty to train the pilot of the helicopter. There is no evidence that Bell breached any duty. Neither of Plaintiffs' experts has put forward a standard of care. Additionally, Bell does warn users. There is no evidence of any negligence by Bell that caused the accident. Plaintiffs' expert, Arthur B. Childers ("Childers"), contends the accident was caused by a failure in the main rotor driveshaft although he does not know the cause of that failure and there is no evidence it was caused by any negligence on the part of Bell.

Summary judgment should be granted with respect to Plaintiffs' strict products liability claim against Bell because there is no genuine dispute as to material fact. There is no evidence of a design or manufacturing defect when the helicopter was sold. Childers does not know whether the part that allegedly failed was original to the helicopter and does not know the operator's maintenance practices. There is no evidence that a marketing defect caused injury and/or death to the Decedent. There is no evidence that the accident could have been avoided by other warnings or instructions because it is unknown what the pilot knew.

In the event the Court does not grant summary judgment on liability on both the negligence and strict products liability claims, the Court should narrow the issues for trial. Specifically, lost wages are not recoverable under DOHSA.

Summary judgment should be granted with respect to Plaintiffs' loss of services damages because there is no genuine dispute as to material fact. The Decedent lived alone, and there is no evidence showing he contributed physical services to Plaintiffs. Additionally, Plaintiffs were not minors at the time of the accident and there is no evidence of any specific pecuniary loss.

Finally, Plaintiff Kolton Bourgeois is an improper party to this suit. Under DOHSA, only a decedent's personal representative can bring an action. Kolton Bourgeois is not the Decedent's personal representative.

## IV. Argument and Authorities

Summary judgment is proper in a case in which there is no genuine dispute of material fact. Fed. R. Civ. P. 56; *Curtis v. Anthony*, 710 F.3d 587, 594 (5th Cir. 2013); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A defendant who seeks summary judgment on a plaintiff's claim must demonstrate and absence of a genuine dispute of material fact by either (1) submitting summary-judgment evidence that negates the existence of a material element of the plaintiff's claim; or (2) showing there is no evidence to support an essential element of the plaintiffs' claim. *See Celotex*, 477 U.S. at 322–23; *Austin v. Kroger Texas, L.P.*, No. 16-10502, 2017 WL 1379453, at *8 (5th Cir. Apr. 14, 2017).

Plaintiffs pleaded two causes of action against Bell: negligence and strict products liability. Bell addresses the merits of negligence and strict liability, then certain items of Plaintiffs alleged damages, and finally that Plaintiff Kolton Bourgeois is not a proper party to this suit.

### A. There is no evidence of negligence

To establish a defendant's liability for negligence, a plaintiff must prove the following elements: (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; (3) the breach proximately caused the resulting injury; and (4) actual loss, injury or damage to the plaintiff. *Pearce v. United States*, 261 F.3d 643, 647 (6th Cir. 2001) (elements of negligence in admiralty); *see also Lindsay v. McDonnell Douglas Aircraft Corp.*, 460 F.2d 631, 636 (8th Cir. 1972) (DOHSA cause of action for wrongful death follows general maritime law,

which incorporates the general law of torts where it is harmonious with admiralty law.). There is no evidence on the ultimate issue of negligence. Plaintiffs designated only two experts: Thomas M. Roney, a forensic economist whose opinions quantify certain damages, and Childers, a pilot and aircraft accident investigator. Childers retreated from any opinion on the ultimate issue of negligence. (Childers Dep. 120:14–25, attached hereto as Exhibit "A"). There is also no evidence as to individual elements. Because Plaintiffs cannot raise a material fact dispute on the duty, breach, and causation elements, Bell is entitled to judgment as a matter of law.

**1. There is no evidence of certain duties**

Plaintiffs pleaded Bell owed duties to exercise reasonable care when: designing; manufacturing; assembling; distributing; servicing; inspecting; certifying as airworthy; and selling aircraft, components, and systems. Plaintiffs' Second Amended Complaint [Dkt. 6] ("Plaintiffs' Complaint") ¶ 4.1. Bell concedes a duty to exercise reasonable care in performing actions it undertakes. However, there is no evidence that Bell serviced the helicopter, and no evidence giving rise to an independent duty to service the helicopter.

Additional duties that can be implied from the breaches Plaintiffs pleaded are a duty to train pilots and a duty to warn users. (Plaintiffs' Complaint ¶ 4.2.) There is no evidence Bell owed a duty to train pilots. There is no evidence Bell trained the pilot in this case, George LeLoup ("LeLoup"), and no evidence giving rise to an independent duty to train LeLoup.

**2. There is no evidence of breach of any duty**

Plaintiffs pleaded Bell breached each duty. However, there is no evidence any duty was breached. There is no evidence Bell breached a duty of care in design. Childers does not identify a standard of care for helicopter design or opine that Bell breached the standard. (See Exhibit "A".) While Childers at one point in his deposition stated the helicopter was defectively designed

(Exhibit "A" 112:23–113:13) he later backed away from offering such an opinion. *Id.* at 120:14–25. Such an opinion should be excluded as set out in Bell's Motion to Strike. Moreover, a defect does not require breach of a standard of care. *See* Restatement (Second) of Torts § 402A (one who sells a product in a defective condition may be liable without regard to use of all possible care in the preparation and sale of the product). The evidence shows the alleged defect is not a defect. The alleged defect identified by Childers was the propensity to encounter Loss of Tailrotor Effectiveness (LTE). (Exhibit "A" 112:23–113:13.) However, "LTE is caused by an aerodynamic interaction between the main rotor and the tail rotor and not caused by a mechanical failure." Federal Aviation Administration, Helicopter Flying Handbook 11-17 (2012) (Exhibit "B" hereto). "It can affect all single rotor helicopters that use a tail rotor of some design." *Id.* Although some helicopter types may be more likely to encounter LTE, the FAA recognizes that helicopters are a collection of compromises, and tail rotors are only certified for normal flight conditions. *Id.* Pilots are expected to know how to avoid LTE situations and how to correct the condition when encountered. *Id.* Consequently, the propensity, if any, of this model helicopter to encounter LTE is not evidence of breach of a standard of care in design.

There is no evidence Bell breached a duty of care in manufacture, assembly, inspection, certification as airworthy, sales, or distribution. Childers does not identify a standard of care for any of these duties or opine that Bell breached the standard. *See* Exhibit "A".)

There is no evidence Bell breached a duty of care to train pilots. While Childers opines without basis that Bell fails to train pilots (Exhibit "A" 74:24–75:10) there is no evidence of any deficiency in Bell's training programs.

There is no evidence Bell breached a duty to warn users. Childers does not identify a standard of care for such duty or opine that Bell breached the standard. (*See* Exhibit "A".)

Moreover, Bell provides "WARNING" and "INDICATIONS" sections in their Rotorcraft Flight Manual for the helicopter that states how the pilot can anticipate the helicopter responding or reacting in the event of a main rotor driveshaft failure, along with the procedure for dealing with such a failure. Bell Helicopter, Bell Model 206L4 Rotorcraft Flight Manual 3-3-I (rev. 4, 2016, attached hereto as Exhibit "C") (The revision log shows the relevant page was not revised since 2008.). The manual states it is to remain in the helicopter during all operations. *See id.*

**3. There is no evidence any breach of any duty caused injury**

There is no evidence any breach of a duty of care in design caused injury. As discussed above, the purported design defect was a propensity to encounter LTE. Even if this was a breach of the duty of care in design, Plaintiff's evidence is the crash resulted from main rotor driveshaft failure (Exhibit "A" 33:9–14, 60:11–61:17, 67:3–12, 101:3–10) not LTE. *Id.* 59:15–16.

There is no evidence any breach of a duty of care in manufacture, assembly, inspection, certification as airworthy, sales, or distribution caused injury. Though he contends the crash was caused by a failure of the main rotor driveshaft, Childers doesn't know what caused the failure. (Exhibit "A" 34:9–22, 60:11–61:19 & 101:3–19. In addition, Childers does not know whether the part he contends failed was original equipment on the helicopter when sold. (Exhibit "A" 98:12–18.) And as noted above, Childers backed away from offering any opinion on the ultimate issue of negligence. (Exhibit "A" 120:14–25.)

There is no evidence any breach of a duty to train pilots or warn users caused the injury at issue. The only pilot at the time of the accident was LeLoup. There is no evidence of what LeLoup knew. (Exhibit "A" 74:24–75:10.) Even assuming Bell breached a duty with respect to his training or warning him, any such breach is immaterial if, for instance, he otherwise had the training or experience regarding a failure of the main rotor driveshaft as alleged. Furthermore,

Plaintiffs' evidence is that LeLoup did what he was supposed to, just not timely. (Exhibit "A" 82:12–83:7.) There is no evidence that had LeLoup received training or any warning from Bell that he would have taken any different action or that injury could have been avoided or lessened.

## B. Strict Products Liability

To establish a defendant's liability for strict products liability, a plaintiff must prove the following elements: (1) the defendant sold a product in a defective condition; (2) the ultimate user or consumer, or his or her property was physically harmed (3) the defect proximately caused the harm; (4) the defendant is engaged in the business of selling such a product; and (5) the product is expected to and does reach the user or consumer without substantial change in its condition when sold. Restatement (Second) of Torts § 402A; *see also Pavlides v. Galveston Yacht Basin, Inc.*, 727 F.2d 330, 338 (5th Cir. 1984) (holding strict liability available in actions under DOHSA and looking to the restatement and circuit precedent for authority on products liability). Because Plaintiffs cannot raise a material fact dispute on the first or third elements, that the product was sold in a defective condition or that the defect proximately caused the harm, Bell is entitled to judgment as a matter of law.

### 1. There is no evidence of design or manufacturing defect at time of sale

While Plaintiffs pleaded that "the Helicopter, its Engine, and its systems and components" were defective (Plaintiffs' Complaint ¶ 4.8), the only part Childers opines failed was the main rotor driveshaft. (Exhibit "A" 33:9–14, 47:24–48:7, 60:11–61:17, 67:3–12, 101:3–10.) This opinion should be excluded as set out by Bell's Motion to Strike. Even if it is not excluded, there is no evidence the helicopter was defective when sold. The main rotor driveshaft is produced by Kamatics. (Exhibit "A" 60:11–61:19.) The Kamatics shaft is called a KAflex. The evidence does not establish that the KAflex was original to the helicopter when built.

(Exhibit "A" 98:12–18.) Even that the helicopter came with a KAflex when built, many came with a Bell shaft and the switch to the KAflex occurred later. (Exhibit "A" 61:20–64:14.) Assuming there was a failure of the main rotor driveshaft, there is no evidence of the cause of the failure. (Exhibit "A" 34:9–22, 60:11–61:19 & 101:3–19.) Therefore there is no evidence that there was a design or manufacturing defect that caused the failure. There is no evidence of the operator's maintenance with regard to the main rotor driveshaft (Exhibit "A" 64:15–64:21) so improper maintenance cannot be ruled out as the cause of the failure. Childers abandoned any opinion there was a design defect. (Exhibit "A" 120:14–120:25.) Moreover, the evidence shows the KAflex was overhauled (Exhibit "A" 99:4–100:25.) so at the time of the accident it was undisputedly not as sold.

**2. There is no evidence any marketing defect of the helicopter caused injury**

There is no evidence Bell's allegedly inadequate warnings caused injury. Directions or warnings may be necessary to prevent a product from being defective. Restatement (Second) of Torts § 402A cmt. j. Childers testified that Bell's warnings and instructions were inadequate. (Exhibit "A" 73:5–74:23.) Even if Childers is correct, there is no evidence that such a defect caused harm. There is no evidence of what LeLoup knew. (Exhibit "A" 74:24–75:10.) If LeLoup otherwise was warned of the potential for failure of the main rotor driveshaft or otherwise had the training or experience for how to respond to a failure of the main rotor driveshaft as alleged, then a defect in warnings or instructions is not a cause of the crash. Furthermore, Plaintiffs' evidence is that LeLoup did what he was supposed to, just not timely. (Exhibit "A" 82:12–83:7.) There is no evidence that had LeLoup received adequate warnings and instructions, and therefore knew what to do and was able to act timely, that injury could have been avoided or lessened.

**C. Plaintiffs cannot recover certain damages**

Among the damages Plaintiffs pleaded are: "Lost wages in the past"; "Loss of the earnings Decedent Rory J. Bourgeois likely would have earned during the balance of his life, but for his death"; and "Loss of services." Plaintiffs' Complaint ¶ 5.1. These damages are unrecoverable in this case.

The facts of this case bring Plaintiffs' suit exclusively under DOHSA. The act applies where an individual dies on the high seas beyond three nautical miles from the shore of the United States. 46 U.S.C. § 30302. The act permits the personal representative of the decedent to bring an action against the person or vessel responsible for the wrongful act, neglect, or default that caused the death. *Id.* The evidence shows the Decedent died within 0.9 miles of a platform in the Gulf of Mexico approximately 67 miles from the Louisiana coast. (NTSB, CEN14FA286: Full Narrative, attached hereto as Exhibit "D".) This places the accident well in excess of the minimum three nautical miles.

Only the Act applies to this case because the Act preempts general maritime law. *Dooley v. Korean Air Lines Co., Ltd.*, 524 U.S. 116, 123 (1998); *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625 (1978). The Act also preempts state statutes. *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 232 (1986). It is the exclusive remedy for deaths on the high seas. *Dooley*, 524 U.S. at 123; *see also Jacobs v. N. King Shipping Co., Ltd.*, 180 F.3d 713, 720 (5th Cir. 1999); *Dalrymple ex rel. Dalrymple v. Fairchild Aircraft Inc.*, 575 F. Supp. 2d 790, 795 (S.D. Tex. 2008); *Baker v. Bell Helicopter/Textron, Inc.*, 907 F. Supp. 1007, 1010 (N.D. Tex. 1995).

Plaintiffs cannot recover lost wages, whether past or what would have been earned. Lost wages are not themselves recoverable under the act, but are a factor in determining loss of inheritance. *Rohan for Rohan v. Exxon Corp.*, 896 F. Supp. 666, 673 (S.D. Tex. 1995). Plaintiffs

have also pleaded loss of inheritance. Plaintiffs' Complaint ¶ 5.1. Therefore, should the Court not grant final summary judgment, it should narrow the issues for trial by disallowing "Lost wages in the past" and "Loss of the earnings Decedent Rory J. Bourgeois likely would have earned during the balance of his life, but for his death" as damages.

Finally, there is no evidence of loss of services. The Act permits recovery of the pecuniary loss sustained by the individuals for whose benefit the action is brought, which can include the decedent's spouse, parent, child, or dependent relative. 49 U.S.C. §§ 30302 & 30303. Loss of services is recoverable under the Act and includes all the financial contributions the decedent would have made to his dependents if he had lived. *Sea-Land Services, Inc. v. Gaudet*, 414 U.S. 573, 584–85 (1974). The services included in this category of damages fall under two subcategories: "loss of physical services"—cooking, cleaning, lawn care, shopping, hauling out the garbage, and making repairs; and "loss of parental nurture"—the nurture, training, education, and guidance that children would have received but for the decedent's death. *In re Air Crash Near Nantucket Island, Mass. on Oct. 31, 1999*, No. 00-MD-1344, 2002 WL 32302598, at *2–3 (E.D. N.Y. May 23, 2002); *see Gaudet*, 414 U.S. at 585. Plaintiffs cannot recover under either subcategory. First, there is no evidence Plaintiffs lost the performance of physical services. Instead, the evidence shows the Decedent lived alone. (Thomas M. Roney, Assessment of Economic Loss in the Matter of Kolton Bourgeois, et al. v Bell Helicopter Textron, Inc., et al., attached hereto as Exhibit "E".) Second, loss of parental nurture is limited to minor children in the absence of a specific showing of pecuniary loss other than the irreplaceable values of companionship and affection. *Oldham v. Korean Air Lines Co., Ltd.*, 127 F.3d 43, 56 (D.C. Cir. 1997); *In re Air Disaster at Lockerbie Scotland on Dec. 21, 1988*, 37 F.3d 804, 830 (2d Cir. 1994); *Solomon v. Warren*, 540 F.2d 777, 789 (5th Cir. 1976); *Matter of Adventure Bound*

*Sports, Inc.*, 858 F. Supp. 1192, 1210 n.6 (S.D. Ga. 1994); *Estate of Zarif by Jones v. Korean Airlines Co., Ltd.*, 836 F. Supp. 1340, 1350 (E.D. Mich. 1993). This is because "[t]he intellectual, moral, and physical training which a child receives from a careful and competent parent during the formative years of its minority should result in preparing the child to make a life and living of his own." *Solomon*, 540 F.2d at 789. In *Oldham*, for example, testimony of two adult children that they sought the counsel of their interested, attentive, and loving parents was insufficient for a loss of nurture award because there was no evidence of a financial loss from their inability to receive such guidance after their parents' deaths. 127 F.3d at 56. The evidence shows that Plaintiffs were not minors at the time of the accident (See Exhibit "E") and there is no evidence of any specific pecuniary loss. Therefore, should the Court not grant final summary judgment, it should narrow the issues for trial by disallowing "Loss of services" as damages.

**D. Plaintiff Kolton Bourgeois is not a proper party to this suit**

As noted above, DOHSA is the exclusive remedy for deaths on the high seas. Under the Act, the decedent's personal representative may bring a civil action in admiralty against the person or vessel responsible. 46 U.S.C. § 30302. The action is for the benefit of the decedent's spouse, parent, child, or dependent relative. *Id.* However, only the personal representative may bring the action. *See, e.g.*, *Alcabasa v. Korean Air Lines Co., Ltd.*, 62 F.3d 404, 407 (D.C. Cir. 1995); *Futch v. Midland Enterprises, Inc.*, 471 F.2d 1195, 1196 (5th Cir. 1973); *Cruz v. Korean Air Lines Co., Ltd.*, 838 F. Supp. 843, 846–47 (S.D. N.Y. 1993); *Beck v. Alaska Air Group*, C 02-01067 CRB, 2002 WL 1162387, at *2 (N.D. Cal. May 24, 2002). Plaintiff Koethe Bourgeois, not Plaintiff Kolton Bourgeois, is the Decedent's personal representative.

## IV. Prayer

For these reasons, Bell Helicopter Textron Inc. asks the Court to grant this Motion in its entirety and render a final summary judgment in its favor. In the alternative, Bell Helicopter Textron Inc. asks the Court to grant this Motion in part and render a partial summary judgment so as to narrow issues and parties for trial.

Respectfully submitted,

/s/ Douglas W. Poole
Douglas W. Poole
Attorney-in-Charge
State Bar No. 16115600 / SDTX 619
Rosenburg, P.O. Box 629
Galveston, Texas 77553
Telephone: (409) 763-2481 Ext. 116
Facsimile: (409) 762-1155
Email: dwpoole@mapalaw.com

OF COUNSEL:
**MCLEOD ALEXANDER POWELL & APFFEL**
802 Rosenburg, P.O. Box 629
Galveston, Texas 77553

**BROWN, DEAN, PROCTOR & HOWELL, LLP**
Stephen C. Howell
State Bar No. 10107700 / SDTX 6048
Email: showell@browndean.com
Cailin M. Ringelman
State Bar No. 24060495 / SDTX 2908211
Email: cringelman@browndean.com
Nathan A. Winkler
State Bar No. 24058899 / SDTX 1487208
306 W. 7th Street, Suite 200
Fort Worth, Texas 76102
Telephone: (817) 332-1391
Facsimile: (817) 870-2427

**ATTORNEYS FOR DEFENDANT**
**BELL HELICOPTER TEXTRON INC.**

**CERTIFICATE OF CONFERENCE**

Counsel for Bell, Cailin M. Ringelman, conferred with Plaintiffs' counsel, Mary Holmsley, on August 8, 2017, concerning the merits of this Motion. An agreement could not be reached and therefore the same is presented to the Court for its consideration.

/s/ Cailin M. Ringelman
Cailin M. Ringelman

**CERTIFICATE OF SERVICE**

This is to certify that all attorneys deemed to accept service of the above-referenced document electronically will be notified via the Court's E-Service system on this the 8th day of August, 2017.

/s/ Douglas W. Poole
Douglas W. Poole